**GENERAL ELECTRIC CO. v. FRUCHT et al.**

**No. 6240.**

Circuit Court of Appeals, Third Circuit.

Oct. 4, 1937.

Drury W. Cooper, John C. Kerr, and George F. Des Marais, all of New York City, for appellant.

Herbert H. Knight and Harry E. Knight, both of New York City, and Wicoff & Lanning, of Trenton, N. J., for appellees.

Before BUFFINGTON and BIGGS, Circuit Judges, and DICKINSON, District Judge.

BIGGS, Circuit Judge.

This is an appeal from a decision of the District Court of the United States for the District of New Jersey, in a suit for patent infringement brought by the plaintiff-appellant, General Electric Company, against Irving A. Frucht and other individuals, defendants-appellees, residents of Newark, N. J. The bill of complaint charges that the appellees made, used, and sold without the license or permission of the appellant apparatus and devices containing and employing the inventions covered by the two patents referred to immediately hereafter, in violation and infringement of the appellant's rights under these patents. The learned District Judge found for the defendants-appellees upon the ground of invalidity of the patents and dismissed the bill of complaint. The appeal followed. Briefly, the facts are as follows:

United States patent No. 1,393,520 was issued to Ernst Friederich on October 11, 1921, upon application serial No. 866,438, filed by him upon October 13, 1914, for an invention entitled "Inclosed Arc Device and the Method of Starting the Same." The Friederich patent states in part:

"The present invention comprises a device in which an arc is operated in an inclosed envelop between electrodes of refractory material, such, for example, as tungsten, in an indifferent atmosphere, the electrodes being proportioned to be heated to incandescence.

"It is one of the features of my invention to operate the arc in an envelope of vapor which will render the arc luminous, for example, mercury vapor, at relatively considerable pressure, preferably approximating atmospheric pressure."

The invention requires a tube filled with gas inert in respect to the metal of the electrodes, and Friederich specifies as possible gases for such use nitrogen, argon, or a mixture thereof, or mercury vapor in conjunction with nitrogen. In respect to the gaseous pressure within the tube, the

patent states that, when mercury is employed with an indifferent gas such as nitrogen, the nitrogen is at "relatively low pressure," but that the mercury "filling" should·be sufficient in amount "to give when vaporized a pressure of at least several millimeters of mercury." The patent then proceeds to refer to the operation of the tube at a gaseous pressure of the order of magnitude of one atmosphere, but also states that in some cases the characteristics of an arc may be obtained at lower pressures. Friederich is in fact describing the functioning of an arc lamp in a tube and under the pressure of gas. The element of novelty and of practical use which the appellant claims this patent embodies is in the fact that the use of gas in sufficient quantities in the inclosed tube or envelope of an arc light prevents the rapid degeneration of electrodes under ion bombardment. The patent states this fact as follows: "The gaseous atmosphere suppresses the electrical disintegration of the cathode which would otherwise occur."

Claims 1, 6, 8, and 14 of the Friederich patent are at issue. The first two claims referred to claim, among other things, a tungsten cathode operating at incandescence and a "filling of material," the gas, under a pressure high enough to give an electric discharge the characteristics of an electric arc. Claims 8 and 14 are substantially the same as claims 1 and 6, except that they prescribe that the gas within the tube shall be "of the order of magnitude of atmospheric pressure."

The second patent here involved, United States patent No. 1,266,517, which expired prior to the completion of the trial, was issued to George S. Meikle on May 14, 1918, upon a divisional application, serial No. 72,328, the application having been filed upon January 15, 1916. Meikle's device is described by him simply as a "rectifier," and is in fact a device for rectifying, that is to say, changing an alternating current to a direct current. His patent states that his device is distinguishable from prior devices of a somewhat similar nature, containing incandescent cathodes, "by the presence of an inert gas at a considerable pressure." Specifically, the patent provides that the tube shall be filled with "argon of relatively appreciable pressure, preferably of the order of magnitude of atmospheric pressure," and that this gas protects the incandescent cathode from disintegration. This is the same principle enunciated in the Friederich patent.

Meikle's patent contains in all four claims, and each claim relates to a different gaseous pressure within the tube, respectively described as "a pressure materially above one millimeter of mercury," "a pressure of at least about one centimeter of mercury," a pressure sufficiently high to create the characteristics of an electric arc, and a "pressure permitting a voltage drop of a few volts with the cathode at incandescence."

Devices such as that described by Meikle are rectifiers of electrical currents, and with slight adaptations possess great commercial value. Such devices permit the charging of a storage battery by the initial energy of an alternating current by transforming it into uni-directional or direct current. The cathode of such a rectifier is maintained at incandescence, the anode is kept "cold," that is to say, at a much less temperature than the cathode, creating the voltage drop referred to in the Meikle patent and in the testimony. The practical effect is to permit only the positive half cycle of the electric current to proceed to the cathode, making the current uni-directional, which is delivered from the tube to the source of energy to be charged.

No question of title to these patents arises in this case; none, of operability. The defenses alleged thereto are that the Friederich patent, as to the claims involved, is invalid because (1) it is completely anticipated by certain prior disclosures, including a patent issued to Osias O. Kruh upon July 16, 1912, being patent No. 1,032,914, entitled a "Vapor Electric Apparatus," and (2) that, in view of the state of the prior art, there was no invention in what either Friederich or Meikle disclosed and claimed in the claims relied on. It is also contended that the Meikle patent is invalid for a further reason, namely, for want of invention over the Friederich patent in suit when considered in relation to a prior patent to Meikle, No. 1,182,290, issued upon his original application, from whence occurred the division heretofore referred to. We deem it unnecessary to make further reference to this last defense, since our decision is based upon other grounds.

There can be no doubt, and it so appears from the record of this cause, that the devices and apparatus sold by the appellees without license or permission of the appellant would in fact infringe these patents, if they be indeed valid patents. The sole question before us therefore is

the validity of the patents, which upon examination turns precisely upon the condition of the prior art as disclosing invention or lack of it in the patentees.

The appellees rely principally upon the Kruh patent as showing invalidity for want of invention in Friederich's and Meikle's patents. The patent to Kruh discloses a device in physical elements and arrangements very similar to the devices disclosed in the patents of Friederich and Meikle. As stated before, Kruh describes his device as a "Vapor Electric Apparatus." His patent provides among other things for "a highly exhausted glass tube," and a positive electrode "of any suitable material, such as tantalum, iron, tungsten, or the like." The patent further prescribes that the bottom of the tube is to contain a pool of mercury, and there is to be a small helix made "of some refractory wire such as platinum, tantalum, tungsten, or the like, and is coated with a suitable oxid, as for example barium oxid, calcium oxid, thorium oxid. * * *" The patent states: "If the helix be brought to a red heat it will give off negative ions or negative electricity and render the interior of the container conducive for current." Kruh also discloses specifically that the described invention may be used for the rectification of alternating current, and the changes required in the form of the tube and the apparatus therein when it is to be used as a means of rectification rather than for illumination are comparatively slight.

It is the contention of the appellant that the Kruh devices operate in a highly attenuated mercury vapor at a pressure below that required by the disclosures of the patents in suit. We cannot support this contention. Friederich refers to gas of a relatively low pressure, and, specifically referring to a mercury "filling," states that the amount of that filling should be sufficient "to give when vaporized a pressure of at least several millimeters of mercury." In his claims Friederich refers in one claim to a pressure sufficiently high to give an arc discharge and later refers to a pressure within the sealed container "of the order of magnitude of atmospheric pressure." Friederich therefore purports to cover a wide gamut of pressures, from several millimeters of pressure to atmospheric pressure. The mercury within the sealed container referred to in the Kruh patent would vaporize when the helix was heated, giving a gaseous pressure of several millimeters or more.

As will be seen from an examination of their respective patents, the apparatus of Kruh and Friederich are substantially the same. The principle of preservation of the cathode from disintegration is present in Kruh's device, though his patent makes no mention of a gaseous pressure to be maintained within the sealed container. Professor Webb testified that, "The mercury pool in the arc, due to the heat developed, boils, and furnishes the gas also." This witness also stated that the functioning of an arc depended upon high pressure of gas. Though Kruh does not discuss gas pressures within the tube, it is obvious from the nature of the device described by him and its method of operation that some pressure of gas within the envelope was his natural expectation. Indeed, he describes mercury vapor as being to a large extent the conducting medium for the electrical current. It is doubtful if he would have deemed his device to be operable without it.

Much of what we have said in respect to Friederich's device is applicable to the device disclosed by Meikle's patent. Meikle's specifications and claims refer to gas pressures which range from "materially above one millimeter of mercury," "a pressure of at least about one centimeter of mercury" to pressure "of the order of magnitude of atmospheric pressure." The apparatus disclosed by him is substantially the same as that disclosed by Kruh. Kruh's device was operable as a rectifier, and his patent specifically states this.

The appellant contends that since Kruh's patent discloses that he may utilize the action of the helix, bringing it to luminosity, merely as a means for starting the respective devices into operation, when he desires to operate his device as a rectifier, thereafter cutting the helices out of the circuit, and since it is plain that under these conditions the mercury pool would not be sufficiently vaporized to prevent disintegration of the anodes, that therefore the device disclosed by Kruh may be distinguished from that of Meikle in which the use of gas to protect the cathode from disintegration is expressly referred to. We are unable to sustain this contention. Such method of operating Kruh's device is merely stated by him as an alternative to operation with the helix in a luminous condition.

In view of these findings extended reference need not be made to the disclosures of certain other patents, such as Gordon's

British patent, No. 218, of 1881, specifying a refractory electrode ' and a globe filled with nitrogen or hydrogen or other inert gas; to Plauson's French patent, No. 343,-943, which specified a tungsten filament for an incandescent lamp; to Fleming's valve patent, United States patent No. 954,-619, specifying tungsten for cathodes as an efficient emitter of electrons; or to Langmuir's United States patent, No. 1,-180,159, which specifies a tungsten filament operating in gas enclosed in a bulb. The disclosures of the patents just enumerated tend to strengthen our opinion that the patents of Friederich and Meikle here in controversy are invalid for want of invention, their respective principles of operation being well within the prior art cases.

We therefore hold the claims referred to, Nos. 1, 6, 8, and 14 of Friederich's patent, No. 1,393,520, and the four claims of Meikle's patent, No. 1,266,517, are invalid over the prior art, and, so holding, we affirm the decision of the district court.